IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| SCORPCAST, LLC dba HAULSTARS,<br><br>Plaintiff<br>v.<br><br>MEDIA SOLUTIONS CANARIAS,<br><br>Defendant. | CIVIL ACTION NO. 2:20-cv-00201<br><br>ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT<br><br>**JURY TRIAL DEMANDED** |

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Scorpcast, LLC dba HaulStars ("HaulStars" or "Plaintiff") files this original complaint against Media Solutions Canarias, ("Media Solutions" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**PARTIES**

1.  HaulStars is a limited-liability company formed under the laws of the State of Delaware, registered at 1201 Orange Street, Suite 600, One Commerce Center, Wilmington, Delaware 19801, and with its principal place of business at 3034 S. Durango Drive, Suite 100, Las Vegas, Nevada 89117.

2.  During the past nine years, HaulStars' innovations have enabled companies around the world to enhance their interactive video offerings and improve their customers' website experience by enabling platforms for interactive videos.  HaulStars conducts leading-edge research and development to create innovative interactive video technologies, including patented interactive video technology that makes content experiential and shoppable.  As described more fully below,

HaulStars' technology allows users to engage content through video on numerous platforms, including self-navigation of content, content aggregation, and/or distribution of video content.

3. Upon information and belief, Defendant Media Solutions is a company organized and existing under the laws of the Kingdom of Spain, with its principal place of business at Apdo. De Correos, 73 38410 Los Realejos, Spain.

## JURISDICTION AND VENUE

4. Plaintiff repeats and re-alleges the allegations in Paragraphs 1-3 as though fully set forth in their entirety.

5. This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

6. Defendant is subject to this Court's specific personal jurisdiction pursuant to principles of due process and FRCP 4(k)(2), the federal long-arm statute, because (1) it has substantial contacts with the United States and has committed and/or induced acts of patent infringement in the United States; and (2) it is not subject to jurisdiction in any state's courts of general jurisdiction.  Upon information and belief, Defendant receives a substantial portion of its online traffic and revenue from users located in the United States, including from users residing in the District.

7. Defendant is also subject to this Court's specific personal jurisdiction pursuant to the Texas Long Arm Statute, due at least to Defendant's substantial business in this forum, including (i) at least a portion of the infringements alleged herein; and/or (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this district.

8. Specifically, Defendant intends to do and does business in Texas, directly or through subsidiaries or intermediaries and makes, uses, advertises, makes available, and/or markets products and services within the State of Texas, and more particularly, within this district, that infringe the patent-in-suit as described more particularly below. Further, Defendant via its channels on websites such as www.pornhub.com, specifically targets the State of Texas by making its products available for sale throughout the State of Texas. Upon information and belief, a significant portion of Defendant's revenue comes from customers located in the State of Texas.

9. Venue is proper in this district under 28 U.S.C. §§ 1400(b) and 1391(b)-(c). Media Solutions is a foreign corporation and may be sued in this district.

## THE TECHNOLOGY

10. Plaintiff repeats and re-alleges the allegations in Paragraphs 1-9 as though fully set forth in their entirety.

11. HaulStars was founded in 2011 by experienced entrepreneurs Narb Avedissian and Nikhil Sreenath (the "Inventors"), who have been business partners for over 14 years and have worked together on three startup companies. After working together successfully on their second company, the Inventors realized an opportunity to engage internet users with video technology, which led to the birth of HaulStars.

12. The initial idea for creating an interactive video experience was first sparked in 2007 when Mr. Avedissian was interested in buying a new laptop. He thought a video review from an actual customer would be helpful in the process. As luck would have it, there was one online video of an actual customer unboxing the very laptop at issue. As Mr. Avedissian watched, he wanted to learn more and envisioned the ability to link to or purchase the item being reviewed.

But at the time, video platforms did not offer interactive tools or commerce-enabled features for video.

13. The Inventors later noticed that people were creating and uploading video reviews of their favorite products and millions of people were watching such videos. After watching these videos and reading viewer comments, the Inventors identified consumer pain points and developed features to address gaps that existed in the online video experience and invented a novel, interactive experience. By way of example, viewers consistently asked where in a video they could find a particular item mentioned in the title or description of a video. These issues posed a problem that called for a marketplace solution, and presented an opportunity for the Inventors to create a different technology solution for users and brands. The Inventors created a tagging feature that enables content creators to tag, at a specific point in a video, any item. Viewers are then able to click on any tagged item and discover more about it or self-navigate to a particular scene containing that item. The Inventors' novel technology for creating interactive video experiences increased customer engagement with videos, which in turn led to increased product consumption.

14. The patent-in-suit details the systems and methods underlying this novel technology. Despite their humble beginnings, the Inventors' technology succeeded in becoming integrated into the websites and social media pages of major companies. The Inventors' campaigns with major brands proved the value of their invention: the HaulStars technology increases customer engagement and leads to increased traffic and sales.

15. Today the HaulStars technology has become the *de facto* industry standard for interactive video.

16. The patent-in-suit, U.S. Patent No. 9,965,780 (the "Asserted Patent" or "the '780 Patent"), is generally directed to systems and methods for creating and providing interactive videos of products and/or services.

17. The patent-in-suit further describes novel systems and methods for content aggregation and distribution of video content. The video content may include overlays that allow for navigation within the video content and/or to different content, such as purchase screens and the like.

## COUNT I

## DIRECT INFRINGEMENT OF U.S. PATENT NO. 9,965,780

18. Plaintiff repeats and re-alleges the allegations in Paragraphs 1-17 as though fully set forth in their entirety.

19. On May 8, 2018, U.S. Patent No. 9,965,780 ("the '780 Patent") was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "System and Methods for Providing User Generated Video Reviews." HaulStars owns all substantial rights, interest, and title in and to the '780 Patent, including the sole and exclusive right to prosecute this action and enforce the '780 Patent against infringers, and to collect damages for all relevant times. A copy of the '780 Patent is attached as Exhibit A.

20. The '780 Patent describes a system for generating interactive videos. The claims of the '780 Patent are not directed to an abstract idea. For example, claim 20 of the '780 Patent recites hardware components of a system, including a processing device, a network interface configured to communicate over a network with a video data store, and a non-transitory memory storing programmatic code that when executed by the at least one processing device causes the system to perform a series of operations. Those operations cause the claimed system to receive

video, process the video in specific ways, and enable navigation events to occur during playback of the video in response to a user selection. Taken as a whole, the claimed inventions of the '780 Patent are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components performing an inventive series of operations that improve upon the functionality of interactive video content.

21.     The written description of the '780 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

22.     Defendant is a content creator of pornographic videos, and operates as a content partner of pornographic websites, including but not limited to Pornhub (www.pornhub.com).

23.     Pornhub and/or other hub sites allow their partners to create channels through Pornhub and/or other hub sites, which allow the partners to offer samples of full-length videos intended to induce users to go to the full website of the partner to purchase a membership.

24.     Pornhub and/or other hub sites, which are video data stores, require their partners (including Defendant) to connect to Pornhub's and/or other hub sites' servers using a network interface and the internet. Pornhub and/or other hub sites' servers have a network interface for connecting to the internet and users. Contained within the Pornhub and/or other hub sites' servers is programmatic code stored in non-transitory memory that is used by Defendant to create channels for its websites that are displayed within Pornhub and/or other hub sites and used by users of the channels. Pornhub's and/or other hub sites' interface enables a navigation event to occur at least in response to a user selecting images and/or text (together "Tags"), which are overlayed over the

video, resulting in a navigation event opportunity (together, the "Accused Instrumentalities"). The video offers several navigation event opportunities, by enabling the user to select certain images or text while the video is playing. These are referred to as jump sites.

25. Defendant posts videos to at least one channel on Pornhub.com and/or other hub sites.

26. Defendant's videos are stored on Pornhub.com and/or other hub sites.

27. Defendant's videos posted on Pornhub.com and/or other hub sites contain a user interface allowing the user to control aspects of the video playback.

28. Defendant's videos posted on Pornhub.com and/or other hub sites contain a slider tool that allows the viewer to move forward through the video.

29. Defendant can customize the slider bar for each video it uploads to Pornhub.com and/or other hub sites.

30. When posting a video to Pornhub.com and/or other hub sites, Defendant has the option to add Tags to the slider bar.

31. The Tags allow a user to jump to specific points in the video.

32. Defendant can add text to the Tag.

33. Defendant controls the content of the Tags, including for example, what text or image appears to the user.

34. Tags are viewable as a video is played.

35. Defendant has at least one video posted to a channel on Pornhub.com and/or other hub sites where Defendant has added a Tag to the slider bar.

36. After uploading a video to Pornhub.com and/or other hub sites, Defendant can select thumbnails that correspond to the video.

37. A well-chosen thumbnail will greatly and positively impact the number of video views.

38. A well-chosen thumbnail makes videos more appealing for users to click on.

39. Videos with Tags receive more views than videos without Tags.

40. Tags are added to video to make the user experience better.

41. Defendant adds Tags to its videos uploaded to Pornhub.com and/or other hub sites to ensure that users view Defendant's videos as premium content.

42. Defendant maintains at least two channels on PornHub, each of which uses the infringing system to upload video content.[1] As of May 2020, these channels had received 67,451,986 views, with 43,382 subscribers.

43. As described above, Defendant made, had made, used, imported, provided, supplied, distributed, sold, or offered to sell products and/or systems, including servers that include at least one processing device, a network interface, and non-transitory memory for storing programmatic code that perform operations according to the claimed inventions of the '780 Patent.

44. By doing so, Defendant has directly infringed (literally and/or under the doctrine of equivalents) at least Claims 20, 21, and 25 of the '780 Patent. Defendant's infringement in this regard is ongoing.

45. Defendant has infringed the '780 Patent by making, having made using, importing, providing, supplying, distributing, selling, or offering to sell the Accused Instrumentalities.

46. Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it

---

[1] *See* https://www.pornhub.com/view_video.php?viewkey=ph5e8ae8072a853; https://www.pornhub.com/view_video.php?viewkey=ph5ed4dcbf57ac7.

for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

47.     Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '063 Patent.

## ADDITIONAL ALLEGATIONS REGARDING INDIRECT INFRINGEMENT

48.     Plaintiff repeats and re-alleges the allegations in Paragraphs 1-47 as though fully set forth in their entirety.

49.     Defendant has also indirectly infringed the Asserted Patent by inducing others to directly infringe the Asserted Patent. Defendant has induced end-users, including Defendant's customers, to directly infringe the Asserted Patent (literally and/or under the doctrine of equivalents) by using the accused systems, methods, and/or services. Defendant took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to make or use the Accused Instrumentalities in a manner that infringes one or more claims of the patent-in-suit, including, for example, Claims 20, 21, and 25 of the '780 Patent. Such steps by Defendant included, among other things, advising, encouraging, or directing personnel, contractors, or suppliers to use the accused services in an infringing manner; and/or distributing instructions that guide personnel, contractors, or suppliers to use the Accused Instrumentalities in an infringing manner. Defendant is performing these steps, which constitute induced infringement with the knowledge of the Asserted Patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Instrumentalities by others would infringe the Asserted Patent. Defendant's inducement is ongoing.

50. Defendant has also indirectly infringed by contributing to the infringement of the Asserted Patent. Defendant has contributed to the direct infringement of the Asserted Patent by its personnel, contractors, and suppliers. The Accused Instrumentalities have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe the Asserted Patent, including, for example, Claims 20, 21, and 25 of the '780 Patent. The special features include, for example, the hardware components of a system, including a processing device, a network interface configured to communicate over a network with a video data store, and a non-transitory memory storing programmatic code that when executed by the at least one processing device causes the system to perform a series of operations that the claimed system to receive video, process the video in specific ways, and enable navigation events to occur during playback of the video in response to a user selection. The special features constitute a material part of the invention of one or more of the claims of the Asserted Patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

51. Defendant has knowledge of the Asserted Patent at least as of the date when it was notified of the filing of this action.

52. Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights.

53. Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

54. Defendant's direct and indirect infringement of the Asserted Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard of Plaintiff's rights under the patent.

55. Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

HaulStars requests that the Court find in its favor and against Defendant, and that the Court grant HaulStars the following relief:

a. Judgment that one or more claims of the Asserted Patent have been infringed, directly or indirectly, either literally and/or under the doctrine of equivalents, by Defendant and/or all others acting in concert therewith;

b. A judgment and order preliminarily and permanently enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringing, directly or indirectly, the Asserted Patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the Asserted Patent by such entities;

c. Judgment that Defendant accounts for and pays to HaulStars all damages to and costs incurred by HaulStars because of Defendant's infringing activities and other conduct complained of herein;

      d.      Judgment that Defendant's infringements be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284, and supplemental damages for any continuing post-verdict infringement up until entry of the final judgment with an accounting as needed;

      e.      Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

      f.      That this Court declare this an exceptional case and award HaulStars its reasonable attorney's fees and costs in accordance with 35 U.S.C. § 285; and

      g.      All other and further relief as the Court may deem just, equitable, and proper under the circumstances.

Dated: June 16, 2020                               Respectfully submitted,

                                                            By: */s/ Todd E. Landis*
Fred I. Williams
Texas State Bar No. 00794855
Michael Simons
Texas State Bar No. 24008042
Jonathan Hardt
Texas State Bar No. 24039906
Chad Ennis
Texas State Bar No. 24045834
WILLIAMS SIMONS & LANDIS PLLC
327 Congress Ave., Suite 490
Austin, TX 78701
Tel: 512-543-1354
fwilliams@wsltrial.com
msimons@wsltrial.com
jhardt@wsltrial.com
cennis@wsltrial.com

Todd E. Landis
State Bar No. 24030226
WILLIAMS SIMONS & LANDIS PLLC
2633 McKinney Ave., Suite 130 #366
Dallas, TX 75204

Tel: 512-543-1357
tlandis@wsltrial.com

John Wittenzellner
Pennsylvania State Bar No. 308996
WILLIAMS SIMONS & LANDIS PLLC
1735 Market Street, Suite A #453
Philadelphia, PA 19103
Tel: 512-543-1373
johnw@wsltrial.com

*Attorneys for Plaintiff Scorpcast, LLC
dba HaulStars*